# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D2023-1640

———————————————

JOHNQUAN JOHNSON,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

———————————————

On appeal from the Circuit Court for Union County.
Mitchell D. Bishop, Judge.

November 27, 2024

B.L. THOMAS, J.

Appellant was convicted of the second-degree murder of his prison cellmate. He seeks review of the circuit court's order denying his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The circuit court summarily denied grounds one and two of the motion and denied grounds three and four after evidentiary hearing.

When a defendant challenges a conviction by asserting ineffective assistance of counsel, he must show not only that his trial counsel rendered deficient performance but also that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Appellant, a six-foot-three, 200-pound man, tortured and beat to death his only cellmate at the Lake Butler Reception Center over the course of a few days. The victim was five feet, one inch tall and weighed 109 pounds. The victim had bruises over his entire body. One corrections officer testified it was one of the worst beatings he has seen. Appellant repeatedly punched or struck the victim's groin and genitalia so violently, the testifying physician who conducted the autopsy said these wounds alone could have caused the victim's death. Appellant even bruised the victim's eyeball, leading the physician to testify that this wound was unusual.

An inmate testified he observed Appellant repeatedly beating and tormenting the victim, including seeing Appellant picking up the victim by his head. On the final night of the victim's suffering, another witness testified he heard crying for help from the victim's cell and loud banging. The victim was found in the cell early the next morning, and there were blood spatters on the wall.

Appellant cannot show any prejudice where there is no reasonable probability that any factfinder would have found Appellant not guilty of second-degree murder. Thus, no alleged ineffectiveness of Appellant's counsel could constitute a violation of the Sixth Amendment right to counsel under the United States Constitution:

> In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies (*sic*)

of the particular decisionmaker, such as unusual propensities toward harshness or leniency.

*Strickland*, 466 U.S. at 694–95.

Thus, we find that the circuit court did not err in denying grounds one through three of the postconviction motion. There was overwhelming evidence that Appellant committed the murder. No one else could have murdered the victim. The physician performing the autopsy did not observe any medical preconditions that could have contributed to the victim's horrible death. Because we find that Appellant did not show prejudice, we need not address whether counsel's performance was actually deficient as to these grounds.

In ground one, Appellant alleged that trial counsel was ineffective for not seeking a change of venue because of the high proportion of residents of Union County who are connected by family or work to law enforcement or the Department of Corrections. However, Appellant did not indicate any specific testimony by corrections or law enforcement officers where this alleged bias would be critically important to deciding Appellant's guilt. Thus, the motion was legally insufficient as to this ground. *See Spera v. State*, 971 So. 2d 754, 758 (Fla. 2007) (explaining that failure to sufficiently allege both prongs of the *Strickland* two-prong test—deficient performance and prejudice—renders the postconviction motion facially or legally insufficient). None of the jurors selected were corrections or law enforcement officers. Additionally, the record shows that there was no express indication among the prospective jurors that this connection with corrections or law enforcement meant that they could not be impartial. Appellant did not show a reasonable probability that, had trial counsel sought a change of venue, his motion would have been successful.

In ground two, Appellant alleged that trial counsel was ineffective for not seeking to strike a specific juror for cause because that juror worked for the Department of Corrections and made some apparently odd responses to the prosecutor's questions in voir dire. When asked if her work at the Department was something that the juror could "put aside" if she was selected for

the jury, the juror responded, "Speak to your fellow lawyers because I'm not doing their public records right now." While the prosecutor was referring to any potential bias that the juror might have towards corrections officers, the juror, whose job concerned responding to public records requests, appeared to have taken the question to mean whether she could stop work for the period that she served on the jury. The prosecutor subsequently mentioned how children tell lies and how adults evaluate whether what the children say is the truth. The prosecutor then asked this juror if, when officers testified, she could "look past the fact they wear a uniform and look at what their testimony is" or if she would be "swayed" by the uniform. The juror responded, "I'd be up in arms. I'll do my best." The trial court did not err in concluding that the juror again appeared to be responding flippantly and asserting that she would be angry to discover an officer lying, rather than that the juror could not be impartial concerning an officer's testimony. Appellant's claim in ground two was properly denied because it was conclusively refuted by the record. *See Kennedy v. State*, 547 So. 2d 912, 913 (Fla. 1989) (explaining that in order to avoid summary denial of a motion for postconviction relief, "[t]he defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant").

In ground three, Appellant alleged that trial counsel was ineffective for failing to cross-examine State's witnesses concerning the theory of defense that Appellant did not commit the murder. Trial counsel testified and the trial transcript shows that his strategy was to focus on a lack of evidence, such as no evidence of any blood on Appellant's hands or any marks, bruises, or swelling on Appellant. Appellant argued in his postconviction motion that trial counsel should have questioned witnesses about whether and when inmates were allowed outside their cells, whether there were areas hidden from camera view, whether fights among the inmates occurred, and whether corrections officers were watching the inmates at all times when they were out of their cells. Trial counsel testified at the postconviction hearing that he did not try to elicit such testimony because the evidence showed that the murder occurred in the cell. As explained above, there was overwhelming evidence that Appellant committed the

4

murder. Thus, Appellant has not shown prejudice as to this ground.

As for ground four, in which Appellant alleged that his trial counsel was ineffective for failing to investigate an insanity defense, Appellant did not present evidence that, if a legal insanity defense had been raised, there was a reasonable probability that the outcome of trial would have been different. Appellant did not present any subsequent mental health evaluations supporting legal insanity. He merely argued that trial counsel should have followed up on this issue and investigated whether an insanity defense could be supported after evaluators had determined that Appellant was competent to proceed to trial. However, trial counsel testified at the postconviction hearing that he made a strategic decision to try the case on the theory that Appellant did not commit the murder because Appellant denied having done so and because Appellant was not cooperative with mental health evaluators. Counsel's reasonable strategic choice cannot constitute ineffective assistance. *See Strickland*, 466 U.S. at 681 ("Those strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based.").

AFFIRMED.

NORDBY and TANENBAUM, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Deborah A. Goins, Escobar, Michaels & Associates, P.A., Tampa, for Appellant.

Ashley Moody, Attorney General, Robert Charles Lee, Assistant Attorney General, Tallahassee, for Appellee.